# In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| Kellis Djon Jackson, #13872-083, | Civil Action No. 9:07-0997-RBH-GCK |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| Edward F. Reilly, Jr., Parole Chairman; Parole Officials (Unknown); Mildred Rivera, Warden and Custodian, | |
| Defendants. | |

## I.    INTRODUCTION

The Plaintiff, Kellis Djon Jackson ("Plaintiff" or "Jackson"), is an inmate now housed in the Federal Correctional Institution ("FCI") in Milan, Michigan. The Plaintiff has brought this 42 U.S.C. § 1983 action against the defendants, Edward F. Reilly, Jr. Parole Chairman, unknown Parole Officials, and Mildred Rivera, Warden and Custodian ("Rivera"). Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II.    *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents:

*Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990). Such is the case with the present complaint.

### III.  FACTUAL BACKGROUND

Plaintiff brings this Complaint as a claim for damages. Plaintiff does not specify his jurisdictional basis, but it appears that his claims are made under *Bivens v. Six Unknown Named FBI Agents*, 403 U.S. 388 (1971). Specifically, Plaintiff claims that the Defendants have violated his constitutional rights under the Due Process Clause by denying him parole consideration after the completion of ten (10) years in custody. He also claims that the Parole

Commission used "inapplicable" regulations to deny him parole[1].  Plaintiff names as defendants Edward F. Reilly, Jr., Chairman of the U.S. Parole Commission ("Reilly"), Unknown Parole Officials, and Mildred Rivera, Warden and Custodian ("Rivera"), who is Plaintiff's custodian at FCI-Estill.  Plaintiff does not specify whether he is suing the named Defendants in their personal or official capacities, nor he does he allege any specific acts by Defendants as the basis for his claim for damages.

Jackson is currently serving an aggregate 80-year sentence.  On May 22, 1987, the U.S. District Court for the Eastern District of Virginia imposed a 30-year sentence for kidnaping in violation of 18 U.S.C. § 1201(a)(1), and a consecutive 5-year sentence for obstruction of justice by threatening the two victims of his kidnaping offense, in violation of 18 U.S.C. Section 1512.  *See* Defendants' Exhibit A, Bureau of Prisons Sentence Monitoring Computation Data.  Further, on June 12, 1987, the U.S. District Court for the District of Columbia imposed a sentence of 10-45 years for a kidnaping in violation of D.C.  Code Section 22-2101 to be served consecutively to the 35-year sentence imposed by the U.S. District Court for the Eastern District of Virginia.  *See* Defendants' Exhibit B.[2]

Jackson appeared for an initial parole hearing with the U.S. Parole Commission on June 13, 2000.  *See* Defendants' Exhibit C.  At the hearing, the Commission considered Jackson's numerous offenses and instances of institutional misconduct.  The presiding hearing examiner noted that the federal portion of Jackson's sentence was 35 years and that Jackson had 45 years on the D.C. Code portion of his aggregate sentence.  *See* Defendants' Exhibit C at page 1.  The examiner applied the regulation at 28 C.F.R. § 2.65, which explains

---

[1]    To the extent that plaintiff is bringing his claims under 42 U.S.C. § 1983, Defendants raise the same defenses.

[2]    With respect to the kidnaping conviction, the court originally imposed a minimum term of 15 years but it was later determined that this was contrary to 18 U.S.C. § 4205.  The Court subsequently entered an order reducing the minimum term to 10 years, specifying that the minimum term was to be served pursuant to 18. U.S.C. § 4205(b)(1).  *See* Defendants' Exhibit A, page 3.

the Commission's paroling policy for prisoners serving aggregate U.S. and D.C. Code sentences. Under this rule, the Commission makes a two-part parole decision.  First, the Commission applies the federal parole guidelines at 28 C.F.R. § 2.20 based upon the prisoner's federal crimes, to determine how much "federal time" the prisoner should serve within the framework of the sentences imposed for those federal crimes.  After determining the date upon which the prisoner will have satisfied that "federal time", the Commission then schedules a further parole hearing (to be held four months before the expiration of the prisoner's "federal time") to determine the prisoner's suitability for parole under the D.C. parole guidelines at 28 DCMR § 204.22, in relation to the prisoner's D.C. Code crimes.  Once the prisoner has satisfied the requirements of both guideline systems, the Commission grant a parole to the prisoner.[3]

At the conclusion of the hearing, the presiding hearing examiner assessed Jackson's federal parole guidelines at 276+ months to be served.  *See* Defendants' Exhibit C at page 3. Following the hearing, the U.S. Parole Commissioner deciding Jackson's case determined that Jackson should be continued to a 15-year reconsideration hearing.  *Id*. at page 4.

On March 15, 2001, the Commission continued Jackson to a 15-year reconsideration hearing.  *See* Defendants' Exhibit D.  Because this decision was more than 48 months above the bottom of Jackson's open-ended guideline range, the Commission provided case-specific factors warranting the decision including: Jackson's involvement in two separate kidnapings of elderly individuals while acting as a law enforcement officer, the unusual cruelty of Jackson's crimes, Jackson's binding of the female victims with tape (shackling and gagging them), and Jackson's institutional misconduct, which included sending threatening letters

---

[3]     The Parole Commission is required to follow this two-part process and apply both U.S. and D.C. parole guidelines to a prisoner serving an aggregated mix of sentences for U.S. and D.C. parole crimes.  *See Thomas v. Brennan*, 961 F.2d 612 (7th Cir. 1992).  Such a prisoner, however, is eligible for parole only on the aggregate sentence.  *See Chatman-Bey v. Meese*, 797 F.2d 987, 993 (D.C. Cir. 1986)

from the institution. *Id.* Jackson administratively appealed the Commission's decision to the Commission's National Appeals Board, challenging the manner in which the Commission considered his case. *See* Defendants' Exhibit E.

Upon administrative appeal, the National Appeals Board modified its decision, finding that 28 C.F.R. § 2.65 had not been correctly applied. *See* Defendants' Exhibit F. The Board continued Jackson for a hearing in February, 2010, to apply the D.C. guidelines with regard to Jackson's D.C. sentence. *Id.* Because this decision was a decision more than 48 months beyond Jackson's minimum guideline range, the Board provided applied the case-specific factors that the Commission had in its previous decision. *Id.*

Jackson appeared before the Commission for an interim hearing on August 7, 2002, to determine whether any new and significant developments had occurred in Jackson's case since his initial hearing. *See* Defendants' Exhibit G. The Commission found that there were none and accordingly ordered no change in the decision continuing Jackson to a hearing in February, 2010. *See* Defendants' Exhibit H.

On June 16, 2004, Jackson received an interim hearing with the Commission. *See* Defendants' Exhibit I. Following this hearing, the Commission ordered no change in the Commission's decision. *See* Defendants' Exhibit J. On June 30, 2006, Jackson appeared for his most recent interim hearing. *See* Defendants' Exhibit K. The hearing examiner noted that Jackson declined to participate in any prison programs. Following the hearing, the Commission ordered no change in the previous decision. *See* Defendants' Exhibit L.

## IV. COURT HISTORY PRIOR TO THIS ACTION

The primary substantive issue Jackson raises in this suit is that the Commission erroneously applied its regulations in his case. Jackson has litigated, and lost, this issue in no fewer than three petitions for writs of habeas corpus. *See Kellis Djon Jackson v. Mark Bezy, Warden*, Case No. 2:04-cv-262 (S.D. Ind.)(attached to Defendants' Brief as Exhibit M), *Kellis Djon Jackson v. B.G. Compton, Warden*, Case No. 7:03cv00094 (W.D. Va.)(also attached to

Defendants' Brief as Exhibit M), and *Kellis Djon Jackson v. United State of America, et al.*, Civil Action No. 9:06-2048 (also attached as Exhibit M). The U.S. District Court for the Southern District of Indiana determined that the Parole Commission properly applied 28 C.F.R. § 2.65 to Jackson's mixed U.S. and D.C. Code offenses. The Western District of Virginia reached the same conclusion. Jackson appealed the latter case to the United States Court of Appeals for the Fourth Circuit, where it was dismissed in an unpublished *per curiam* decision (attached to Defendants' Brief as Exhibit K). The undersigned is aware that this Court recently dismissed Jackson's writ challenging the Commission's application of its regulations and challenging the imposition of his sentences. *See Kellis Djon Jackson v. United State of America, et al.*, Civil Action No. 9:06-2048; *see also* Order in Case No. 9:06-2048 (attached as Defendants' Exhibit K).

## V.  PROCEDURAL HISTORY OF THE PRESENT ACTION

On April 7, 2007, Plaintiff commenced this Section 1983 action against the Defendants. [1] In response, the undersigned issued an Order directing the issuance of summonses, and directed the Defendant to file an answer to the complaint. [11] The Defendants were served, and on August 29, 2007, their counsel filed a motion for summary judgment. [30] On September 4, 2007, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified the Plaintiff of the Defendants' motion for summary judgment and the possible consequences if Plaintiff failed to adequately respond to the Defendants' Motion within thirty-four (34) days. [31]

On September 21, 2007, Plaintiff filed a motion for an extension of time to respond to the summary judgment motion. [35] That motion was granted that same day, allowing Plaintiff until November 8, 2007 to respond. [36] On October 25, 2007, Plaintiff filed a motion to stay proceedings on the grounds that he was scheduled to be transferred to another institution, the location of which was unknown to the Plaintiff. [47] On November 16, 2007, the undersigned issued an Order allowing the Plaintiff an additional 20 days to respond to the

motion for summary judgment. [40] On December 13, 2007, an order was issued by the Court giving the parties five days to inform the court of Plaintiff's current location. [43] On December 17, 2007, Plaintiff filed his notice of change of address [46] and an additional Order was issued allowing the Plaintiff until January 9, 2008, to file a response to the motion for summary judgment. [52]

On January 8, 2008, the Plaintiff filed a response in opposition to the Defendants' motion for summary judgment. [56] On the same day, the Plaintiff also filed a motion to amend his complaint [57], a motion for summary judgment [58], and a motion for a preliminary injunction [60].

Thus, pending before the court are four (4) motions: the Defendants' motion for summary judgment [30]; Plaintiff's motion to amend the complaint [57]; Plaintiff's motion for cross summary judgment [58]; and Plaintiff's motion for preliminary injunction. [60] Plaintiff specifically seeks monetary damages; however, as his principal objective is release from custody, it follows that he also is seeking declaratory and injunctive relief.

## VI.  PLAINTIFF'S MOTIONS TO AMEND HIS COMPLAINT AND FOR A PRELIMINARY INJUNCTION

As mentioned *supra*, Plaintiff has filed a motion to amend his Complaint to include the identity of the John Doe Defendants [57] and to add as a remedy a request for a preliminary injunction. [60] On January 17, 2008, the Defendants filed responses in opposition to these motions. [62; 63] For the reasons discussed below, it is recommended that Plaintiff's motions be denied.

### A.  Plaintiff's Motion to Amend

Plaintiff filed his Complaint on April 7, 2007 [1], naming as defendants, the Chairman of the Parole Commission (Reilly), his Warden at the time (Rivera), and unknown Parole officials. Thereafter, on August 2, 2007, the Defendants answered [25] and on August 29, 2007, the named Defendants filed a Motion for Summary Judgment. [30]

Pursuant to Fed.R.Civ.P. 15, a party may amend his pleading once at any time before a responsive pleading has been filed.  After the opposing party has answered, however, a plaintiff must seek leave of the court to amend.  Although Federal Rule 15(a) directs the court to grant leave to amend "when justice so requires," it is well-settled that the "disposition of a motion to amend is within the sound discretion of the district court".  *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988), *citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  However, a court may deny a motion to amend a pleading "where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant."  *Deasy v. Hill*, 833 F.2d at 40, *citing Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).  In the present case, the Court recommends that the Plaintiff's motion to amend his complaint be denied, as the motion was filed some five (5) months <u>after</u> the Defendants had filed their motion for summary judgment in August.  "A motion for leave to amend is not a vehicle to circumvent summary judgment."  *Witt v. American Trucking Associations, Inc.*, 860 F.Supp. 295, 305 (D.S.C. 1994) (citation omitted).  Plaintiff will not be permitted to avoid summary judgment by amending his complaint after the motion for summary judgment has been filed.  Plaintiff's motion to amend his complaint [57] should be denied.

### B.  The Motion for Preliminary Injunction

Plaintiff's motion for a preliminary injunction is based upon his allegation that (1) the Commission has unlawfully failed to consider him for parole for his aggregated "mixed" D.C. Code/U.S. Code sentence; (2) and therefore this Court must grant a preliminary injunction based on the merits of his case, or he will suffer irreparable harm.  [60]  As a threshold matter, however, the substance of Plaintiff's argument has been repeatedly rejected both on the merits and on procedural grounds.  The Court recently denied a petition by Plaintiff for habeas relief pursuant to 28 U.S.C. § 2241, *Jackson v. United States, et al.*, C.A. No. 9:06-2048-RBH [37], and in so doing declined to address the <u>same</u> argument Plaintiff now makes in this *Bivens*

action and used as the basis of his Motion for an Emergency Preliminary Injunction. The District Court denied relief because the action was a successive petition under 28 U.S.C. § 2244, and because the merits of Plaintiff's argument had been addressed by two other district court judges in two prior Section 2241 cases in the U.S. District Court for the Southern District of Indiana and to the Western District of Virginia, *Kellis Djon Jackson v. Mark Bezy, Warden*, and *Kellis Djon Jackson v. B.G. Compton, Warden*. The U.S. District Court for the Southern District of Indiana determined that the Commission properly applied 28 C.F.R. § 2.65 to Petitioner's mixed sentences. The Western District of Virginia court came to the same conclusion and found that the Commission is required to treat mixed sentence inmates differently from purely federal inmates. Plaintiff appealed the Virginia case to the U.S. Court of Appeals for the Fourth Circuit and his case was dismissed.

Even if Plaintiff had not already argued and lost his action in other courts, the Court does not find that he makes a compelling argument for a preliminary injunction. A preliminary injunction is an extraordinary remedy, and should be granted only if the moving party clearly establishes entitlement to the relief sought. *Hughes Network Systems v. Interdigital Communications Corporation*, 17 F.3d 691, 693 (4th Cir. 1994) (*citing Federal Leasing, Inc. v. Underwriters at Lloyds*, 650 F.2d 495, 499 (4th Cir. 1981)). "Mandatory injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman,* 34 F.3d 266, 270 n.2 (4th Cir. 1994) (citations omitted).

In determining whether to grant a preliminary injunction, the Court must examine the following factors:

1. The moving party's likelihood of success in the underlying dispute between the parties;

2. Whether the moving party will suffer irreparable harm if the interim relief is denied;

3. The injury to the opposing party if an injunction is issued; and

4. The public interest.

*Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997).

Plaintiff has not and cannot show he is entitled to the relief sought. First, Plaintiff must overcome the high threshold of making a "clear showing" that he will suffer irreparable harm if the court denies his request. *Multi-Channel TV Cable Company v. Charlottesville Quality Cable Operating Company*, 22 F.3d 546, 551 (4th Cir. 1994) (*quoting Direx Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812-813 (4th Cir. 1992)). If the moving party establishes irreparable harm, then the court must balance the harm to the moving party caused by a failure to grant the injunction against the likelihood of harm to the United States, as the opposing party, if the injunction is granted. *Id.* If the balance tips decidedly in favor of the party requesting the injunction, then "a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." *Id.* However, if the balance does not tip decidedly in favor of the movant, there must be a strong probability of success on the merits. *Id.* Finally, the court must determine whether the public interest favors the granting of a preliminary injunction. *Id.*

### 1. Plaintiff has not shown irreparable harm

### 2. Plaintiff has not shown that the balance of harm tips decidedly in his favor

Plaintiff contends that the continued deprivation of his constitutional right to a parole hearing guided by a correct application of 18 U.S.C. § 4205 and 28 C.F.R. § 2.65 constitutes irreparable harm. (*See* Plaintiff's Motion, p.4-7). Plaintiff has simply re-cast his argument in the mold of a tort claim, so he can seek a preliminary injunction. At bottom, however, the issue before the Court is the same issue that Plaintiff already has litigated and re-litigated unsuccessfully in other federal courts. The Court will not require the Parole Commission to grant a hearing to Plaintiff when Plaintiff has lost on the merits of his decision over and over again. There is no irreparable harm in the failure to have the parole hearing sought, where the

hearing is not obligatory under the statutory and regulatory scheme.  For the same reason, the balance of harm tips in favor of the Defendants, as the integrity of the program would be impugned by ordering a "bonus" hearing.

### 3.  It does not appear that the Plaintiff will succeed on the merits

Plaintiff has failed to show any irreparable harm or that the balance of likely harm tips decidedly in his favor.  Thus, Plaintiff must show a strong probability of success on the merits in order for the Court to grant his request for a preliminary injunction.  There is a correlation between the likelihood of a plaintiff's success and the probability of irreparable harm to him. *North Carolina State Ports Authority v. Dart Containerline Company Limited*, 592 F.2d 749, 750 (4th Cir. 1979).  "[I]f the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify the issuance of an injunction."  *Id.; but see Safety-Kleen, Inc.*, 274 F.3d at 870 (Luttig, J., concurring) (*quoting Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975), that "[t]he traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will likely suffer irreparable injury and also that he is likely to prevail on the merits").  As discussed above, Plaintiff has repeatedly lost on the merits of his claim.  There is no likelihood that this Court would rule differently.

### 4.  Public interest

Plaintiff also fails to make the requisite showing on fourth prong of the test, with respect to the public interest.  Although Plaintiff argues that by granting the relief requested (a parole hearing) is in the public's interest to have § 2.65 correctly correct applied, his argument is not persuasive, because three federal judges already have held that the Parole Commission has correctly applied § 2.65 to Plaintiff's case.

For the foregoing reasons, it is recommended that Plaintiff's motion for a preliminary injunction [60] should be denied.

## VII.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.  Plaintiff failed to effect personal service upon the John Doe Defendants

Federal defendants sued in their personal capacities must be served with process in accordance with rules applicable to individual defendants.  *See Simpkins v. District of Columbia Government*, 108 F.3d 366, 369 (D.C. Cir. 1997) (defendants in *Bivens* action must be served as individuals, pursuant to Fed. R. Civ. P. 4(e)).  Rule 4(e)(2) of the Federal Rules of Civil Procedure requires that a copy of the summons and complaint be delivered to the defendant (or his appointed or legal agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there.

Plaintiff has failed to identify "John Doe, Parole Officials (unknown)" so that service of process may be effected upon the proper individuals.  Accordingly, Plaintiff has failed to effect proper service, and it is recommended that Plaintiff's claims against the unknown Parole Commissioners should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(4) and 12(b)(5).

### B.     Plaintiff's challenge to the fact or duration of his confinement must be brought by a successful petition for writ of habeas corpus before relief under *Bivens* is available.

It is well-settled that habeas corpus is the exclusive remedy for a federal prisoner who sues the Parole Commission with the goal of securing his release from confinement.  *See Chatman-Bey v. Thornburgh*, 864 F.2d 804, 809 (D.C. Cir. 1988) (*en banc*) (Congress has designated habeas as the appropriate vehicle for individuals who challenge the lawfulness of their custody).  The exclusivity of habeas corpus is not limited to claims for "immediate release or release in the near future," but includes any claim that the prisoner "is being deprived of the chance to secure his release[.]"  *Id*.  The requirement that the plaintiff seek relief in habeas cannot be evaded by artful pleading; prisoners cannot evade the requirements of habeas corpus "by the simple expedient of putting a different label on their pleadings."  *See*

*id.*, citing *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973); *Heck v. Humphrey*, 512 U.S. 477, 481-2 (1994) (Section 1983 claim for damages for alleged constitutional violations in arrest and conviction cannot be brought without exhausting habeas corpus remedy, because "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction".); *Poston v. Shappert*, 222 Fed. Appx. 301, *1 (4th Cir. 2007) (applying rationale in *Heck v. Humphrey* to claims arising under *Bivens*).

In this case, Plaintiff again challenges the Commission's application of its regulations, claiming that he should have been released on parole, and as he has not been released, he is entitled to damages.  As mentioned earlier, Plaintiff has already litigated and lost this issue in three prior cases.  *See Kellis Djon Jackson v. Mark Bezy, Warden*, Case No. 2:04-cv-262 (S.D.Ind.); *Kellis Djon Jackson v. B.G. Compton, Warden*, Case No. 7:03CV00094 (W.D. Va.), and *Kellis Djon Jackson v. United State of America, et al.*, Civil Action No. 9:06-2048 (D. S.C.).  The only novelty of the present case is that Plaintiff now seeks money damages. However, in order for Plaintiff to obtain money damages, he first would have to establish that the Commission improperly applied its regulations, or must demonstrate the invalidity of those regulations altogether.  Plaintiff cannot make that showing, because he is precluded from relitigating this issue under the doctrine of *res judicata* and issue preclusion.  *See*, *generally*, *Aliff v. Joy Manufacturing Company*, 914 F.2d 39 (4th Cir. 1990).

C.    <u>**Plaintiff's claims against the Defendants in their official capacities are jurisdictionally barred by the doctrine of sovereign immunity.**</u>

To the extent Plaintiff is suing the individually named Defendants in their official capacities, the suit is barred by the doctrine of sovereign immunity.  Plaintiff's claims against the individual Defendants in their official capacities are, under law, claims asserted against the United States.  *See Boron Oil v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989) (finding that a subpoena to compel a federal employee to testify in his official capacity would be an action against the United States and within the protection of sovereign immunity).  The United

States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." *See United States v. Sherwood*, 312 U.S. 584, 586 (1941); *United States v. Testan*, 424 U.S. 392, 399 (1976) ("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction . . . to entertain suits against the United States'") (*quoting Sherwood*).

Where the federal government waives its immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981). Such waivers are construed strictly in favor of the sovereign. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986). That a plaintiff may name federal employees as defendants in their official capacities does not operate to evade the immunity of the sovereign. *See Clark v. Library of Congress*, 750 F.2d 89, 102-04 (D.C. Cir. 1984). Therefore, Plaintiff's money damages claims against the individually named defendants in their official capacities alleging statutory and constitutional violations must be dismissed for lack of subject matter jurisdiction because the United States has not waived sovereign immunity for those claims. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (United States has not waived sovereign immunity for money damages sounding in constitutional tort); *Chen v. United States*, 854 F.2d 622, 625-25 (2d Cir. 1988) (United States has not waived sovereign immunity for claims based on violations of constitution, statute or regulations).

> **D.    To the extent the complaint is viewed as brought under *Bivens*, it must be dismissed because the Defendant Reilly and the John Doe Parole Officials are entitled to absolute immunity from suit.**

To the extent that Plaintiff is proceeding under *Bivens v. Six Unknown Named FBI Agents*, the Defendant Reilly and the John Doe Parole Officials are entitled to absolute immunity against plaintiff's claims. It is well-settled that members of the judiciary are entitled to absolute immunity. *See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). The Supreme Court has extended absolute immunity to certain officials who perform functions

closely associated with the judicial process. *See, e.g., Butz v. Economou*, 438 U.S. 478, 508-09 (1978)(hearing examiners entitled to absolute immunity). Absolute immunity has also been extended to parole officials because they perform tasks that are functionally comparable to those of judges. *See Walrath v. United States*, 35 F.3d 277, 281-82 (7th Cir. 1994) (members of the United States Parole Commission staff and the Commissioner are absolutely immune from suit for actions taken in revoking parole); *Sellers v. Procunier*, 691 F.2d 1295 (9th Cir.), *cert. denied*, 454 U.S. 1102 (1981) (absolute immunity for Parole Board member under *Butz*); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1150 (5th Cir. 1985) (Parole Board members have absolute immunity); *Nelson v. Balazic*, 802 F.2d 1077 (8th Cir. 1986) (Parole Board members have absolute immunity for release decision); *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984) (acts of hearing officer were "inexorably connected with the execution of parole revocation procedures" and thus the officer was entitled to absolute immunity); *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986) (absolute immunity for hearing examiner who conducted detention proceeding and made recommendation to parole board). Defendant Reilly and the John Doe Parole Officials are therefore entitled to dismissal of all claims against them in their individual capacities under the doctrine of absolute immunity.

### E.      To the extent the Complaint is viewed as brought under *Bivens*, it must be dismissed because each of the Defendants is entitled to qualified immunity from suit.

Individually-named federal defendants sued for money damages for violations of constitutional rights are immune from suit under the doctrine of qualified immunity if, *inter alia*, the complaint fails to allege facts that give rise to the violation of a clearly-established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). *See also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("[u]nless the plaintiff's

allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). Under the "clearly established" inquiry, a *Bivens* defendant need not demonstrate that the law was specifically established in his favor at the time he acted (*i.e.*, "that a Supreme Court opinion had specifically approved their actions"), but only that the law was unsettled at the time. *See Zweibon v. Mitchell*, 729 F.2d 162, 173-74 n.19 (D.C. Cir. 1983), *cert. denied*, 469 U.S. 880 (1984). "[O]nce the trial judge determines the law was not clearly established at the time the contested conduct occurred, the inquiry ceases." *See Zweibon*, 720 F.2d at 168 (citing *Harlow v. Fitzgerald*, *supra*.)

Furthermore, the Supreme Court has held that a convicted prisoner who applies for parole does not have an inherent constitutional right to release on parole. *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979). As there is no constitutional right to release on parole, it can hardly be said that the Defendants violated his due process rights by extending his release on parole contrary to the intent of the sentencing court.

Contrary to Plaintiff's claim, the Defendants are immune from suit in this action because the Complaint does not allege the violation of clearly established constitutional rights clearly established under law. Again, Plaintiff has litigated this issue three times and lost each time; he cannot hope that a different result would obtain on this, his fourth attempt.

### F.    Claims against Defendants Reilly and Rivera must be dismissed because the doctrine of respondeat superior is inapplicable in *Bivens* suits.

To maintain a *Bivens* suit against Defendants Reilly and Rivera, Plaintiff must allege, and ultimately prove, that these Defendants were directly and personally responsible for the alleged constitutional violation. *See Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987). Supervisory personnel may not be forced to defend a *Bivens* action under the doctrine of respondeat superior. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Plaintiff's complaint

does not allege that Defendants Reilly and Rivera were personally and directly involved in any decision relating to denial of parole.  Instead, the only factual allegations set forth in the Complaint with respect to Defendant Reilly relate to his responsibilities as Chairman of the U.S. Parole Commission.  With regard to Defendant Rivera, Plaintiff alleges that she has the responsibility and duty to ensure that the provisions of the Judgment and Commitment are carried out.  Accordingly, because Plaintiff has not alleged the personal involvement of Defendants Reilly and Rivera in denial of parole to him, his claims against these Defendants should be dismissed.

### G.     The court lacks personal jurisdiction over certain of the Defendants

As another reason that Plaintiff's claims must fail, the court finds that it lacks personal jurisdiction over Defendant Reilly and the John Doe Defendants, as they do not reside in South Carolina.  A district court does not have nationwide jurisdiction over defendants who live outside the forum state simply because the defendants are federal government employees.  *See Stafford v. Briggs*, 444 U.S. 527 (1980).  Because a *Bivens* action seeks relief against the personal resources of a federal employee in his individual capacity, the court must acquire personal jurisdiction in order to enter a binding judgment.  *See Griffith v. Nixon*, 518 F.2d 1195 (2d Cir. 1975).

Defendant Reilly and, presumably, the other John Doe Parole Officials are not residents of the State of South Carolina, and their place of business is not in South Carolina.  The exercise of personal jurisdiction over these Defendants by this Court would violate due process.  In order to subject a non-resident defendant to a binding judgment based on out-of-state service, due process requires that the defendant have "minimum contacts" with the forum state of such a character that the maintenance of the suit would not offend "traditional notions of fair play and substantial justice."  *See International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945). There must have been "some act by which the defendant purposefully [availed himself] of the privilege of conducting activities within the forum state,

thus invoking the benefits and protections of its laws." *See Hanson v. Deckla*, 357 U.S. 235, 253 (1958). Plaintiff has not alleged that Reilly or any of the John Doe Defendants conducted any activities within South Carolina, as all decisions made in Plaintiff's case with regard to parole were made from the office in Maryland. Furthermore, even assuming, *arguendo,* that the mere fact that parole decisions regarding persons who reside in South Carolina would be sufficient to consider non-resident parole officials to have conducted business within South Carolina, this still would not grant the court personal jurisdiction over these Defendants in their individual capacity, as all of the contacts with the state were actions taken on behalf of the United States Government in the official capacity of the responsible individual. Defendant Reilly and the John Doe Defendants were conducting government business, and did not avail themselves of the benefits and protections of South Carolina law. *See Green v. McCall*, 710 F.2d 29, 32-33 (2d Cir. 1983). Therefore, it would violate the Defendants' due process rights to subject them to a suit against them in their personal capacity based solely on official governments contacts with South Carolina, even assuming such contacts existed.

Accordingly, because this Court lacks personal jurisdiction over Reilly and the John Doe Defendants, it is recommended that this action should be dismissed against them under Federal Rule of Civil Procedure 12(b)(2).

**RECOMMENDATION**

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment **[30] should be granted,** the Plaintiff's Motion for Cross Summary Judgment **[58] should be denied,** the Plaintiff's Motion to Amend the Complaint **[57] should be denied** and Plaintiff's Motion for Preliminary Injunction **[60] should be denied.**


GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

January 23, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).